UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOEL CINTRON,<br><br>        *Plaintiff*,<br><br>v.<br><br>TRUMP ORGANIZATION LLC a/k/a TRUMP CORPORATION and TRUMP TOWER COMMERCIAL LLC,<br><br>        *Defendants*. | Case No. 1:18-cv-06921-PAE<br><br>**DECLARATION OF DIANA TADDONI IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS OF PLAINTIFF NOEL CINTRON** |

### Declaration of Diana Taddoni

I, Diana Taddoni, declare as follows:

1.    I am currently employed as the Vice President of Operations and Executive Assistant to the Chief Operating Officer for defendant, Trump Tower Commercial LLC ("TT Commercial" or the "Company"). The facts set forth herein are of my own personal knowledge and, if sworn as a witness, I could and would testify competently thereto.

2.    TT Commercial owns and manages the commercial areas of the building located at 725 5th Avenue, New York, New York, known as Trump Tower. As part of my responsibilities for TT Commercial as the Vice President of Operations, I regularly interact with the employees of the Company at Trump Tower and facilitate the employees' signing of various forms and agreements relating to their employment.

3.     Since approximately 1990, TT Commercial has employed Noel Cintron ("Mr. Cintron") in various positions, including as its Manager / Head of Security for the building. I am personally familiar with Mr. Cintron's employment with the Company.

4.     In June 2018, TT Commercial updated its employment documents and agreements, including its confidentiality agreements and arbitration agreement, and I provided such documents to the employees for their review and execution. In June 2018, as a condition of Mr. Cintron's continued employment, and in consideration of the mutual promises to arbitrate any disputes, I met with Mr. Cintron and provided him with employment agreements, including a document entitled "Mutual Arbitration Agreement" ("Arbitration Agreement"). Mr. Cintron informed me that, before entering into any agreements, he wished to review them with his attorneys. I provided Mr. Cintron with copies of the agreements and informed him he was certainly free to speak with his attorneys about the agreements. Approximately two weeks later, on the morning of July 10, 2018, Mr. Cintron returned the signed Arbitration Agreement to the Company. Attached hereto as Exhibit "A" is a true and correct copy of the Arbitration Agreement Mr. Cintron executed.

5.     The Arbitration Agreement states the following:

> In consideration of the undersigned employee's [] and Trump Tower Commercial LLC's [] mutual promises to arbitrate disputes, the Company and Employee [] agree that if a dispute is covered by this Agreement (a "Covered Claim"), the Parties will submit the dispute to final and binding arbitration before a single, neutral arbitrator.
>
> The parties to this Agreement wish to resolve, fairly and quickly, any dispute that may arise in the context of their employment relationship, including but not limited to, the hiring, performance or termination of employment and/or cessation of employment with the Company and/or against any employee, officer, alleged agent, director, affiliate, owner, subsidiary, or relating to an application or candidacy for employment …

>A Covered Claim is any claim, dispute, or controversy between the Parties … .  A Covered Claim includes, but is not limited to, claims for … violation of any state or federal labor or employment statute …, unpaid wages, unpaid compensation, … and/or any other claim for violation of any federal, state or other governmental law, statute, regulation or ordinance … .

6.The Arbitration Agreement also provides that both parties to the agreement knowingly and voluntarily waive "the right to trial by jury or judge for any covered claim," that they "entered into this agreement voluntarily and not in reliance on any promises or representations other than those contained in this agreement," and that both parties were "advised to seek legal advice as to their rights and responsibilities under the Agreement and have had the opportunity to do so."  Based on Mr. Cintron's comments about having his attorneys review the agreements, it is my understanding that he did seek legal advice as to his rights and responsibilities under the Agreement.  On or about July 10, 2018, Dierdre Rosen, Senior Vice President of Human Resources, executed the Arbitration Agreement on behalf of the Company.

7.The Arbitration Agreement further provides that the arbitration between the Company and employee will be conducted pursuant to the JAMS Employment Arbitration Rules & Procedures ("JAMS Rules").  The Agreement directs employees to the JAMS website, www.jamsadr.com, where they can obtain a copy of the JAMS Rules, which are easily accessible.  Attached hereto as Exhibit "B" is a true and correct copy of the current JAMS Rules.  Rule 11(b) of the JAMS Rules provides: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator."  The parties agreed that the arbitrator decides any disputes about the Arbitration Agreement.

8. The Arbitration Agreement and other employee documents relating to Mr. Cintron are maintained in his personnel file at the Company in the normal course of business.

I declare under penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct.

Executed this 8th day of August, 2018 at New York, New York.

_____
DIANA TADDONI