UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOEL CINTRON,<br><br>    *Plaintiff*,<br><br> v.<br><br>TRUMP ORGANIZATION LLC a/k/a TRUMP CORPORATION and TRUMP TOWER COMMERCIAL LLC,<br><br>    *Defendants*. | Case No. 1:18-cv-06921-PAE |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO COMPEL ARBITRATION
<u>AND DISMISS CLAIMS OF PLAINTIFF NOEL CINTRON</u>**

Howard M. Wexler
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Defendants
TRUMP ORGANIZATION LLC and
TRUMP TOWER COMMERCIAL LLC

## TABLE OF CONTENTS

Page

Table of Authorities ..................................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 1

    A.    Cintron's Employment with TT Commercial. ........................................................ 1

    B.    Cintron Signed an Agreement to Arbitrate Any Disputes Arising from His Employment, Including Wage-Related Disputes. .................................................. 2

    C.    The Arbitration Agreement Requires Cintron to Submit the Claims He Asserts in this Action to Arbitration. ....................................................................... 4

ARGUMENT .................................................................................................................................. 4

I.    This Court Should Compel ARbitration of Cintron's Claims Pursuant to the Parties' Agreement and Dismiss this Case. ............................................................................ 4

    A.    Federal Law Favors Arbitration and Mandates Enforcement of Cintron's Arbitration Agreement. ........................................................................................... 4

    B.    The Court Must Compel Arbitration of Cintron's Claims Because He Entered Into a Valid Arbitration Agreement and His Dispute Falls Within the Scope of the Agreement. .................................................................................. 5

        1.    Cintron Entered into a Valid Arbitration Agreement. ............................... 6

        2.    Cintron's Claims Are Covered by the Arbitration Agreement. ................. 7

II.    Cintron Delegated to the Arbitrator Authority to Resolve Disputes Over Enforceability of the Arbitration Agreement. ................................................................... 8

III.    The Court Should Dismiss This Action or, Alternatively, Stay the Action Pending Arbitration. ...................................................................................................................... 10

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
   672 F.3d 113 (2d Cir. 2011) ............................................................................................. 5

*Arrigo v. Blue Fish Commodities, Inc.*,
   408 F. App'x 480 (2d Cir. 2011) ...................................................................................... 9

*AT&T Technologies, Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) .......................................................................................................... 8

*Bankers Conseco Life Ins. Co. v. Feuer*,
   No. 16 CIV. 7646 (ER), 2018 WL 1353279 (S.D.N.Y. Mar. 15, 2018) ......................... 10

*Bassett v. Elec. Arts, Inc.*,
   93 F. Supp. 3d 95 (E.D.N.Y. 2015) ................................................................................. 1

*Bell v. Cendant Corp.*,
   293 F.3d 563 (2d Cir. 2002) ............................................................................................. 6

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) .......................................................................................................... 5

*Contec Corp. v. Remote Solution, Co., Ltd.*,
   398 F.3d 205 (2d Cir. 2005) ............................................................................................. 9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ...................................................................................................... 5, 6

*Emilio v. Sprint Spectrum L.P.*,
   508 F. App'x 3 (2d Cir. 2013), *aff'd*, 582 F. App'x 63 (2d Cir. 2014),
   *cert. denied*, 135 S. Ct. 1569 (2015) ................................................................................. 9

*Isaacs v. OCE Bus. Servs., Inc.*,
   968 F. Supp. 2d 564 (S.D.N.Y. 2013) .............................................................................. 7

*KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*,
   812 F. Supp. 2d 377, 386 (S.D.N.Y. 2011) ...................................................................... 2

*Litvinov v. UnitedHealth Grp. Inc.*,
   No. 13-cv-8541 (KBF), 2014 WL 1054394 (S.D.N.Y. Mar. 10, 2014) ........................... 6

*Magi XXI, Inc. v. Stato Della Città Del Vaticano*,
   714 F.3d 714 (2d Cir. 2013) ............................................................................................. 2

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..................................................................................................5, 6, 8, 11

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
    991 F.2d 42 (2d Cir. 1993).................................................................................................6

*Qin Hui Li v. Wok 88 Inc.*,
    No. 1:17-CV-8715-GHW, 2018 WL 3384441 (S.D.N.Y. July 11, 2018) ..........................7, 8

*Raymond v. Mid-Bronx Haulage Corp.*,
    No. 15-CV-5803 (RJS), 2017 WL 9882601 (S.D.N.Y. June 10, 2017) ..................................10

*Reid v. Supershuttle Int'l, Inc.*,
    No. 08-cv-4854 (JG) (VVP), 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010)..........................7

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010)...........................................................................................................8, 9

*Saizhang Guan v. Uber Techs., Inc.*,
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ................................................................................10

*Smith/Enron Cogeneration L.P. v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999).................................................................................................7

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984).................................................................................................................5

*Syngenta Crop Prot., LLC v. Ins. Co. of N. Am., Inc.*,
    No. 18CV715(DLC), 2018 WL 1587601 (S.D.N.Y. Mar. 29, 2018) ......................................10

*Thompson v. Body Sculpt Int'l, LLC*,
    No. 18-CV-1001-ARR-GRB, 2018 WL 3235545 (E.D.N.Y. July 2, 2018).............................8

*Tong v. S.A.C. Capital Mgt., LLC*,
    52 A.D.3d 386, 860 N.Y.S.2d 84 (1st Dep't 2008) ..............................................................5

*U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*,
    101 F.3d 813 (2d Cir. 1996).................................................................................................8

*Whitt v. Prosper Funding LLC*,
    No. 1:15-CV-136-GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015) .................................6

*Zambrano v. Strategic Delivery Sols., LLC*,
    No. 15 Civ. 8410 (ER), 2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) .................................10

**Statutes**

9 U.S.C. § 2.......................................................................................................................5

iii

46575935v.3

iv

9 U.S.C. § 3 ......................................................................................................................................11

9 U.S.C. § 4 ........................................................................................................................................6

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* .........................................4, 7, 8, 10

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ........................................................................ *passim*

New York Labor Law ..........................................................................................................4, 7, 8, 10

New York Labor Law Article 6, §§ 190, *et seq.* ...............................................................................4

## PRELIMINARY STATEMENT

The Court should dismiss this case and compel Plaintiff to arbitrate his claims. Plaintiff Noel Cintron ("Cintron" or "Plaintiff") signed an arbitration agreement in connection with his employment with Defendants, which requires the parties to submit "any claim, dispute, or controversy" between them to binding arbitration. Agreements to arbitrate disputes, like the one signed by Cintron, are enforceable and bar civil actions from proceeding in court. To compel arbitration in this case, this Court need only find that: (1) Cintron entered into a valid agreement to arbitrate his claims; and (2) the claims in this action fall within the coverage of the agreement. As set forth below, Defendants have established both of these elements.

Accordingly, Defendants request that the Court grant this Motion, order Cintron to pursue his claims in the proper forum of arbitration, and dismiss this case.

## FACTUAL BACKGROUND

**A.    Cintron's Employment with TT Commercial.**

TT Commercial owns and manages the commercial areas of the mixed-use building located at 725 5th Avenue, New York, New York, known as Trump Tower. Declaration of Diana Taddoni ("Taddoni Dec.") ¶ 2.[1] Since approximately 1990, TT Commercial employed Plaintiff Noel Cintron in various positions, including as its Manager and Head of Security for the building at times relevant to this action.[2] Taddoni Dec., ¶ 3.

---

[1] The Court may consider the Taddoni Declaration. *See Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 98 n.1 (E.D.N.Y. 2015) (considering extrinsic documents when granting defendant's motion to compel arbitration: "A court may consider documents outside of the pleadings for the purposes of determining the arbitrability of a dispute.")

[2] Cintron was and is employed by Defendant Trump Tower Commercial LLC. Defendant Trump Organization LLC does not employ Cintron, but Cintron's Complaint alleges that it was also his employer, together with Trump Tower Commercial LLC. *See* Complaint, *passim*.

### B. Cintron Signed an Agreement to Arbitrate Any Disputes Arising from His Employment, Including Wage-Related Disputes.

In June 2018, TT Commercial updated its employment documents and agreements, including its confidentiality agreements and arbitration agreement, and provided such documents to its employees for execution. Taddoni Dec. ¶ 4. In June 2018, as a condition of Cintron's continued employment, and in consideration of the mutual promises to arbitrate any disputes, one of Cintron's managers, Diana Taddoni, met with Cintron and provided him with employment agreements, including a document entitled "Mutual Arbitration Agreement" ("Arbitration Agreement"). Taddoni Dec., ¶ 4. Cintron stated that, before entering into any agreements, he wished to review them with his attorneys. *Id*. Taddoni provided Cintron with copies of the agreements and informed him he was certainly free to speak with his attorneys about the agreements. *Id*. Approximately two weeks later, on the morning of July 10, 2018, Cintron returned the signed Arbitration Agreement to his manager. *Id*.

In the Arbitration Agreement, Cintron expressly agreed to submit to binding arbitration any disputes related to his employment with TT Commercial and its affiliates.

The Arbitration Agreement states the parties'[3] agreement to arbitrate disputes between them, as follows:

> In consideration of the undersigned employee's [] and Trump Tower Commercial LLC's [] mutual promises to arbitrate disputes, the Company and Employee []

---

[3]    While Trump Organization LLC is not a signatory to the Arbitration Agreement, it is nonetheless entitled to enforce it as an affiliate (as set forth in the first paragraph of the Arbitration Agreement) because "the alleged conduct of the nonparties is closely related to the contractual relationship" between Plaintiff and TT Commercial. *Magi XXI, Inc. v. Stato Della Città Del Vaticano,* 714 F.3d 714, 722 (2d Cir. 2013) (internal quotations and citations omitted); Non-signatories are deemed "closely related" to signatories where their "interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC,* 812 F. Supp. 2d 377, 386 (S.D.N.Y. 2011) (internal citation omitted)*;*   This is especially so given Plaintiff's claim of an alleged joint employer relationship between Defendants. *See* Complaint ¶¶ 8, 11-13.

>agree that if a dispute is covered by this Agreement (a "Covered Claim"), the Parties will submit the dispute to final and binding arbitration before a single, neutral arbitrator.

Taddoni Dec., Ex. A at 1.

The Arbitration Agreement also describes the disputes that are subject to arbitration:

>The parties to this Agreement wish to resolve, fairly and quickly, ***any dispute that may arise in the context of their employment relationship***, including but not limited to, the hiring, performance or termination of employment and/or cessation of employment with the Company and/or against any employee, officer, alleged agent, director, affiliate, owner, subsidiary, or relating to an application or candidacy for employment …
>
>A Covered Claim is ***any claim, dispute, or controversy between the Parties*** … . A Covered Claim includes, but is not limited to, claims for … violation of any state or federal labor or employment statute …, ***unpaid wages***, ***unpaid compensation***, … and/or any other claim for violation of any federal, state or other governmental law, statute, regulation or ordinance … .

Taddoni Dec., Ex. A at 1 (emphasis added).[4]

The Arbitration Agreement provides that the arbitration will be conducted pursuant to the JAMS Employment Arbitration Rules and Procedures, and the agreement is enforceable under the Federal Arbitration Act. Taddoni Dec., Ex. A at 1-2.

Finally, the Arbitration Agreement provides that both parties knowingly and voluntarily waive "the right to trial by jury or judge for any covered claim," that they "entered into this agreement voluntarily and not in reliance on any promises or representations other than those contained in this agreement," and that both parties were "advised to seek legal advice as to their rights and responsibilities under this Agreement and have had the opportunity to do so." Taddoni Dec., Ex. A at 3 (emphasis omitted).

---

[4] Excluded claims include workers' compensation benefits and unemployment compensation. Taddoni Dec. ¶ 5, Ex. A at 1. None of the excluded claims are applicable here.

3

    **C.**    **The Arbitration Agreement Requires Cintron to Submit the Claims He Asserts in this Action to Arbitration.**

On July 9, 2018, Cintron filed a Complaint in the Supreme Court of the State of New York, New York County. Dkt. 1. Defendants then removed the action to the United States District Court for the Southern District of New York. *Id*.

Cintron's Complaint alleges that Defendants misclassified him as exempt from overtime, and that Defendants failed to pay him overtime wages allegedly due to him under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and New York Labor Law ("NYLL") Article 6, §§ 190, *et seq*. The Complaint alleges claims for: (1) Failure to Pay Overtime Wages in violation of the FLSA; (2) Failure to Pay Overtime Wages in violation of the NYLL; (3) Failure to Provide Benefits or Wage Supplements; (4) Failure to Provide Proper Annual Wage Notices; and (5) Failure to Provide Accurate Wage Statements. Cintron alleges that each of his claims relate to his wages and compensation and arise from his employment with Defendants. *See* Complaint, *passim*. These claims fall within the scope of Cintron's Arbitration Agreement because they are each a "claim, dispute, or controversy between the Parties," and also constitute claims for "violation of any state or federal labor or employment statute," for "unpaid wages," and/or "unpaid compensation" and "for violation of any federal, state or other governmental law, statute, regulation or ordinance." Taddoni Dec., Ex. A at 1.

**ARGUMENT**

**I.**    **THIS COURT SHOULD COMPEL ARBITRATION OF CINTRON'S CLAIMS PURSUANT TO THE PARTIES' AGREEMENT AND DISMISS THIS CASE.**

    **A.**    **Federal Law Favors Arbitration and Mandates Enforcement of Cintron's Arbitration Agreement.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., provides in relevant part that "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable

4

and enforceable ….." 9 U.S.C. § 2.  The FAA establishes a national policy liberally favoring arbitration where, as here, the parties contract for that mode of dispute resolution.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); 9 U.S.C. §§ 1 *et seq.*; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (FAA created "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary").

Here, Cintron agreed to resolve his disputes with Defendants by binding arbitration under the FAA.  The Arbitration Agreement states that it is "governed by and enforceable under the Federal Arbitration Act … ."  Taddoni Dec., Ex. A.  On its face, the Arbitration Agreement states Cintron's acknowledgment that the FAA applies, and accordingly, the Court's examination of the Arbitration Agreements is controlled by the FAA.  *Tong v. S.A.C. Capital Mgt., LLC*, 52 A.D.3d 386, 387, 860 N.Y.S.2d 84, 84-85 (1st Dep't 2008) (holding that the plaintiff's employment claims were subject to the broad arbitration provision contained in his employment agreement, and that as the construction of said provision was governed by the FAA, any ambiguities in its construction were to be governed by the FAA.)  In addition, arbitration clauses in employment contracts are generally governed by FAA.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).  Therefore, the FAA and its liberal policy favoring arbitration applies to Cintron's Arbitration Agreement and mandates enforcement of that agreement.

   **B.**   **The Court Must Compel Arbitration of Cintron's Claims Because He Entered Into a Valid Arbitration Agreement and His Dispute Falls Within the Scope of the Agreement.**

Under the FAA, a two-part test determines whether a claim is subject to arbitration: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v.*

*Cent. United Life Ins. Co*., 307 F.3d 24, 28 (2d Cir. 2002).  The party seeking to enforce an arbitration agreement must satisfy both elements by an "ordinary preponderance of the evidence standard."  *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993).   The FAA mandates that a court *must* order arbitration when it is satisfied that the execution of an arbitration agreement is not at issue.  9 U.S.C. § 4.  *See also, e.g., Dean Witter Reynolds, Inc*., 470 U.S. at 218 (citing 9 U.S.C. §§ 3, 4).  Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone*, 460 U.S. at 24-25.

As set forth below, in the case at hand, both elements are easily satisfied.  Therefore, the Motion to compel arbitration should be granted.

      1.  <u>Cintron Entered into a Valid Arbitration Agreement</u>.

Whether the parties have entered into a valid agreement to arbitrate is determined by ordinary principles of state contract law.  *Bell v. Cendant Corp.,* 293 F.3d 563, 566 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract, … the ultimate question of whether the parties agreed to arbitrate is determined by state law" concerning the formation of contracts); *Whitt v. Prosper Funding LLC*, No. 1:15-CV-136-GHW, 2015 WL 4254062, at *1 (S.D.N.Y. July 14, 2015) (concluding arbitration agreement was enforceable under New York contract law and granting motion to compel arbitration).

Here, it is undisputed that Cintron signed the Arbitration Agreement, that he received notice of and assented to the agreement, and he was afforded the opportunity, at his request, to have the agreement reviewed by his counsel.  Taddoni Dec., ¶¶ 4, 6.  *See Litvinov v. UnitedHealth Grp. Inc.*, No. 13-cv-8541 (KBF), 2014 WL 1054394, at *2 (S.D.N.Y. Mar. 10, 2014).  Therefore, conclusively, Cintron knew of and assented to the terms of the Arbitration

Agreement. *See Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) ("Under New York law, a person who 'signs or accepts a written contract is conclusively presumed to know its contents and to assent to them.'" (quoting *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004))). Those terms include an agreement to arbitrate disputes arising out of Cintron's employment, including claims brought under the FLSA and NYLL. *See Qin Hui Li v. Wok 88 Inc.*, No. 1:17-CV-8715-GHW, 2018 WL 3384441, at *4 (S.D.N.Y. July 11, 2018) (enforcing arbitration agreement where plaintiff signed the agreement, creating presumption he knew of its contents and assented to them).

In short, Cintron manifested his acceptance of the terms of the Arbitration Agreement by executing the agreement with his employer. Accordingly, there can be no dispute that Cintron entered into a legally valid arbitration agreement.

> 2. <u>Cintron's Claims Are Covered by the Arbitration Agreement</u>.

Cintron's alleged claims fall squarely within the scope of the Arbitration Agreement. The Arbitration Agreement explicitly includes "any dispute that may arise in the context of [the parties'] employment relationship," "any claim, dispute, or controversy between the Parties," all claims for "unpaid wages" and "unpaid compensation," and all claims for "violation of any federal, state or other governmental law, statute, regulation or ordinance." Taddoni Dec., Ex. A at 1. Thus, there can be *no doubt* that Cintron's overtime and related wage and hour claims under the FLSA and New York law are covered by the Arbitration Agreement.[5]

---

[5] That Cintron filed the instant action the day before he submitted the signed Arbitration Agreement is of no import because when an arbitration agreement does not contain an express temporal limitation, it applies to any covered claims—even those that arose before the parties executed the agreement. *Smith/Enron Cogeneration L.P. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999); *Reid v. Supershuttle Int'l, Inc*., No. 08-cv-4854 (JG) (VVP), 2010 WL 1049613, at *5 (E.D.N.Y. Mar. 22, 2010) ("The Second Circuit has held that arbitration

7

Further, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24–25.  As a result, arbitration should only be denied when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  Moreover, the FAA accords a strong presumption in favor or arbitration of employer and employee disputes.  *See U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 816 (2d Cir. 1996) (citing cases).  Courts routinely grant motions to compel arbitration for overtime claims under the FLSA and New York Labor Law.  *See e.g., Qin Hui Li*, 2018 WL 3384441, at *4 (compelling arbitration of FLSA and NYLL overtime claims); *Thompson v. Body Sculpt Int'l, LLC*, No. 18-CV-1001-ARR-GRB, 2018 WL 3235545, at *7 (E.D.N.Y. July 2, 2018) (same).  Thus, any purported "doubt" about the parties' agreement must be resolved in favor of compelling arbitration.

## II. CINTRON DELEGATED TO THE ARBITRATOR AUTHORITY TO RESOLVE DISPUTES OVER ENFORCEABILITY OF THE ARBITRATION AGREEMENT.

To the extent Cintron argues the Arbitration Agreement is in any way invalid or unenforceable (it is not), or that the agreement does not apply to his claims (it clearly does), Cintron cannot challenge enforcement of the Arbitration Agreement in this Court.  Rather, the parties expressly delegated those issues of arbitrability to an *arbitrator*.

The Supreme Court has held that parties may assign the authority to decide questions of arbitrability to an arbitrator, not the courts.  In *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010), the Supreme Court held that a "delegation provision" assigning the authority to decide gateway questions of arbitrability to an arbitrator is itself an agreement to arbitrate, and

---

clauses without an express limitation to 'future[] disputes' should be applied to any preexisting claims." (*quoting Coenen v. R.W. Pressprich & Co*., 453 F.2d 1209, 1212 (2d Cir. 1972))).

must be treated as valid and enforced by courts unless it is specifically challenged apart from the remainder of the agreement to arbitrate. *See also Arrigo v. Blue Fish Commodities, Inc*., 408 F. App'x 480, 482-83 (2d Cir. 2011) (affirming order compelling arbitration and upholding delegation of arbitrability to arbitrator, citing *Rent-A-Center*.).

Cintron's Arbitration Agreement expressly incorporates the JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"). Taddoni Dec., Ex. A, ¶ D. The JAMS Rules empower the *arbitrator* to decide the issues of arbitrability. Specifically, JAMS Rule 11(b) provides: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." Taddoni Dec., Ex. B, Rule 11(b)

The Supreme Court and Second Circuit have found similar delegation clauses to be valid and enforceable. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 68-69 (finding that delegation clause delegated gateway question of arbitrability to the arbitrator); *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013), *aff'd*, 582 F. App'x 63 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1569 (2015) (finding where parties' arbitration agreement incorporated the JAMS rules, including the arbitrator's power to decide issues of arbitrability, "the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator"); *Contec Corp. v. Remote Solution, Co., Ltd*., 398 F.3d 205, 208 (2d Cir. 2005) ("when ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator").

Likewise, district courts have routinely enforced delegation clauses contained in arbitration rules such as the JAMS rules or American Arbitration Association (AAA) rules. *See,*

*e.g., Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 728 (E.D.N.Y. 2017) (finding where parties' arbitration agreement incorporated the JAMS rules, questions of arbitrability are for the arbitrator); *Raymond v. Mid-Bronx Haulage Corp.*, No. 15-CV-5803 (RJS), 2017 WL 9882601, at *5 n.1 (S.D.N.Y. June 10, 2017) (delegating threshold questions of arbitrability of FLSA and NYLL overtime claims to the arbitrator based on arbitration agreement's incorporation of AAA rules); *see also Bankers Conseco Life Ins. Co. v. Feuer*, No. 16 CIV. 7646 (ER), 2018 WL 1353279, at *3 (S.D.N.Y. Mar. 15, 2018) (finding threshold issues delegated to arbitrator based on incorporation of arbitration rules); *Syngenta Crop Prot., LLC v. Ins. Co. of N. Am., Inc.*, No. 18CV715(DLC), 2018 WL 1587601, at *5 (S.D.N.Y. Mar. 29, 2018) (same).

Here, by signing the Arbitration Agreement, Cintron explicitly agreed that an arbitrator shall rule on "formation, existence, validity, interpretation or scope" of the Arbitration Agreement. Taddoni Dec., Ex. B, Rule 11(b). As a result, and to the extent Cintron argues the Arbitration Agreement is invalid, unenforceable, or does not apply to his claims against Defendants, these threshold issues must be presented to an *arbitrator* rather than this Court.

Accordingly, Cintron's agreement to leave to the arbitrator any threshold disputes over arbitrability is permissible under the FAA and must be enforced.

### III.   THE COURT SHOULD DISMISS THIS ACTION OR, ALTERNATIVELY, STAY THE ACTION PENDING ARBITRATION.

Defendants move to dismiss or, alternatively, stay this action pending the completion of arbitration. The Court has authority to dismiss rather than stay Cintron's claims because Defendants have requested dismissal. *See Zambrano v. Strategic Delivery Sols., LLC*, No. 15 Civ. 8410 (ER), 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016) (granting defendants' motion to compel arbitration and noting "because Defendants seek dismissal rather than a stay, this Court has discretion whether to stay or dismiss Plaintiffs' action under the FAA") (citing

10

*Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 596 (2015)); *see also Moses H. Cone*, 460 U.S. at 26-28 (finding no substantive distinction between a stay and a dismissal without prejudice).  Alternatively, the FAA provides that once the Court is satisfied that the matter can be arbitrated, the action must be stayed.  *See* 9 U.S.C. § 3; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26 (holding that courts "are obliged to grant stays of litigation under § 3 of the Arbitration Act.").  Because this case is subject to arbitration, as discussed above, the Court must dismiss or stay this action pending completion of the arbitration.

## CONCLUSION

Cintron agreed to resolve his disputes with Defendants through arbitration.  Accordingly, Defendants respectfully request that the Court enforce Cintron's arbitration agreement and dismiss his claims.

Dated: New York, New York
       August 8, 2018

SEYFARTH SHAW LLP

By: */s/ Howard M. Wexler*
    Howard M. Wexler
    hwexler@seyfarth.com
    620 Eighth Avenue
    New York, New York  10018
    Telephone:  (212) 218-5500
    Facsimile:  (212) 218-5526

Attorneys for Defendants
TRUMP ORGANIZATION LLC
TRUMP TOWER COMMERCIAL LLC